No. 14,568.

AVERCH *v.* AVERCH.

(90 P. [2d] 962)

Decided May 15, 1939.

Mr. IRVING L. GREENWALD, Mr. MANDELL LEVY, for plaintiff in error.

Mr. CHARLES ROSENBAUM, for defendant in error.

*En Banc.*

MR. JUSTICE BOCK delivered the opinion of the court.

THIS controversy involves the custody of a minor child, now seven years old. Plaintiff in error, to whom reference is hereinafter made as plaintiff, brought an action in divorce against defendant in error, hereinafter designated as defendant, which, on February 9, 1935, culminated in a final decree in favor of plaintiff on the ground of cruelty. In the interlocutory and final decrees it was provided that custody of the minor child, Estelle, who was at that time three years of age, should be in the plaintiff during forty-two weeks of the year, she being granted the privilege also of taking the child out of the state; and that defendant should have such custody during ten weeks of the year, provided he pay the cost of transporting the child each way, and return her to plaintiff at the expiration of ten weeks. Both parties have remarried and each has a child by subsequent marriage.

In June, 1937, defendant, exercising his right under the decrees, went to New York City and obtained custody of the child and returned with her to Denver, where he

subsequently was advised by medical experts that she needed an operation, which, plaintiff consenting thereto, was duly performed. Defendant, however, failed to return the child to plaintiff as provided by the decrees, and April 15, 1938, she filed a petition with the trial court for a citation against defendant to show cause why he should not be adjudged in contempt for such failure. Hearing on citation was had April 27, 1938, at which time Dr. M. E. Marcove appeared as a witness for defendant and testified substantially: The sickness of the child goes back several years, to a time when she was extremely ill with abscesses all over her body, including one on the lower left eyelid, upon which it was necessary to operate in January, 1938; that the operation was not one hundred per cent successful, as is apparent from the result at the present time; that another operation may be necessary; that the necessary treatment could be given by some competent surgeon in New York; that there would be no danger attendant upon her being taken to New York, provided she received competent treatment; that there was no reason for keeping her in Denver for the preservation of her health; that his treatments were not completed, and he felt he ought to be allowed to finish the job.

At that time the trial court found defendant not guilty of contempt, and that it was for the best interest of the child to remain in Colorado, under the care of defendant "for a while"; that if plaintiff wanted to set the matter for further hearing at some future time, that would be satisfactory. Several attempts were made to secure another hearing on the petition of plaintiff, but owing to the summer vacation of the court intervening, the matter was delayed until July 29, 1938, at which time defendant introduced in evidence letters from two doctors, to which plaintiff objected, to the effect that the child should remain in Denver for a further period of six months. The court overruled the objections and ordered that Estelle remain with the father for such further

period. The court then suggested that defendant file a petition seeking permanent custody of his daughter.

On November 10, 1938, plaintiff filed another petition for the return to her of the child's custody, in accordance with the provisions of the interlocutory and final decrees. November 15, 1938, pursuant to the suggestion of the court, defendant filed a petition for modification of the interlocutory decree, in which he asked for permanent custody of the child. A hearing was had on this petition December 10, 1938, at which Dr. Marcove, who had performed the operation and previously testified in behalf of defendant, now appeared as a witness for plaintiff and testified that the daughter had been under his medical care; that since April she had improved at least fifty per cent, and "that the probability of another operation is entirely gone"; that her health appeared to be fair; that she needed massages for the scar tissue around the eye; that he knew of no reason why these treatments could not be given if the patient was with her mother in New York; and that she is in better condition physically than he had hoped for several months before.

Dr. L. S. Faust, a medical expert, called as a witness on behalf of plaintiff, testified, in effect, that he had made a thorough physical examination of the child two days prior to the hearing, with a complete history of the case at hand, consisting of "an examination of the urine, blood count and stereoscopic examination," and found her to be "in good physical condition"; that it made no difference, so far as climate was concerned, having in mind the physical welfare of the child, whether she lived in Denver or in New York City; that proper treatment could be provided as well in New York as in Denver. That he was unable to discover any organic disease.

Dr. Manuel Friedman, a witness for defendant, testified that from a medical standpoint it would be to the best interest of any child to remain in Denver rather than to be taken to New York, but more so in this case; that he did not know anything about the present condition of the

child's health; that it had been more than fifteen months since he last examined her; that even though the child contracted the infection in Denver from which she had suffered, it was better that she remain here, owing to general climatic conditions.

The court denied plaintiff's petition for custody and granted defendant permanent custody until further order of the court.

Plaintiff assigns as error that the action of the trial court was "arbitrary, unreasonable, contrary to the law and evidence in that the court has exceeded its jurisdiction and abused its discretion in arriving at" its conclusions and in entering its orders in consonance therewith.

No question is raised concerning plaintiff's moral and physical fitness or her ability to furnish proper home surroundings to the minor with whose welfare we are here concerned. In fact, the trial court stated that it was satisfied that so far as the home conditions were concerned, there could be no exceptions taken to those furnished by either party. The primary issue as to the custody concerns the general climatic advantages resulting to the child in the selection of its abode. We have decided to make final disposition of this case on the application for supersedeas.

The general rule in cases involving the custody of minor children is that, "the interest and welfare of the child is the primary and controlling question." *Wilson v. Mitchell,* 48 Colo. 454, 465, 111 Pac. 21. We must presume that this rule was considered and applied by the court when it entered the interlocutory and final decrees, giving the permanent custody of the minor child to plaintiff, with the ten-week exception already noted. To deprive plaintiff of this custody and justify a modification of the decree awarding the custody to defendant, it was necessary that a change of circumstances be shown or new facts presented, which were unknown to the applicant at the time the decree was entered. 19 C. J. 350, 351. There was no change of circumstances in the pres-

ent case from which the trial court could justify the modification of its decree. The sickness which defendant here asserts made it necessary that the child live with him in Denver was contracted here, and it is a fair inference from the evidence that it existed at the time of the entry of final decree. There is nothing in the evidence to support a holding that the ailment, on the basis of which defendant retained custody of the child in Denver for approximately two years, is such as to require her continued habitat in this climate. In fact, there is no evidence, as related to the ailment, to the effect that the New York climate would in any way be injurious to the child's health. We may admit that general climatic conditions are better in Denver than in New York City. Defendant, however, made no objection at the time of the entry of the final decree, or before, to the plaintiff taking the little girl out of the state; in fact, she had express permission to do so. We have here a mother attempting to regain the custody of a child of tender years. "It is well settled * * * that courts will not deprive the mother of custody of her child unless it is shown clearly that she is so unfit a person as to endanger the child's welfare." 19 C. J. 351. There is no evidence in the record here that plaintiff was in any way an unfit person to have custody of her child. We note that at the time of the modification of this decree the trial court stated, "that the plaintiff is pretty nervous and excited and disturbed." Such was to be expected under the circumstances. Depriving this girl of tender years of the love and care of her mother not only was unfair to the child, but also was unjust to the mother.

We are reminded of the apt words of Mr. Justice White in *Wilson v. Mitchell, supra,* which are particularly applicable here (p. 479), that, "if the instincts of filial * * * affection are of any value, or, if the voice of nature, * * * that caused Rachel to weep for her first-born and refuse to be comforted, is worth anything, they furnish the only proper solution of this question."

It is the universal opinion that a mother's love, care and affection for a child of tender years are the most unselfish of all factors in human relations, and that the child is not to be deprived thereof unless for a very good reason, founded on lack of moral fitness and proper home surroundings. A mere choice of climate, under the facts here, is not sufficient, in our opinion, to govern such factors. The court's action herein in modifying the final decree was arbitrary and an abuse of discretion. There was no evidence to support such modification.

The trial court also denied the application of plaintiff for attorney's fees. A like application also was filed here. It was necessary for plaintiff, in the protection of her rights and the best interests of her little daughter, to come from New York to Denver at great personal expense. She was seeking to enforce the decrees entered by the trial court. It is meet and equitable, in the light of the surrounding circumstances, and in the interest of justice, that defendant pay plaintiff's attorney's fees incurred in this proceeding. It is, therefore, ordered that the judgment of the district court awarding custody of the minor child to defendant is reversed, and the cause remanded with directions to said court to return the custody of the child to plaintiff in accordance with the interlocutory and final decrees; further, that defendant deposit in the registry of that court within five days from receipt of remittitur herein the sum of $200 to be paid to plaintiff's counsel as reasonable attorney fees.

Judgment reversed.

Mr. Justice Francis E. Bouck not participating.