No. 15,274.

WILLIAMS *v.* WILLIAMS.
(135 P. [2d] 1016)

Decided March 22, 1943.

474

Mr. ALFRED TODD, Mr. EDWARD O. RUSSELL, for plaintiff in error.

Mr. WILKIE HAM, for defendant in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THIS review concerns an order of the district court awarding the custody of the eight year old daughter of the parties who are divorced, to a sister of the father (defendant in error), for one year from June 23, 1942, which order by its terms permitted the child to be taken to and kept at the custodian's home in the state of Indiana for such period. The mother of the child, plaintiff in error, prosecutes this proceeding in error.

■■ With apparent indifference to the simple requirements of Rule 112, R.C.P. Colo., concerning records on error, no copy of the judgment attacked is contained in the record certified by the clerk and such is shown only by the informal oral decision of the court recorded in the reporter's transcript. No copy of the petition upon which the trial was based is included in the review files. Neither the record nor the reporter's transcript are folioed, and except as to the names of witnesses testifying, the transcript is not indexed. Further, the record

on error contains nothing to show that a motion for new trial was made or dispensed with, which, at least, as to issues of fact, is a condition precedent to the maintenance of a review of the judgment on error. Rule 59 C (e) R.C.P. Colo. These deficiencies afford ample basis for dismissal of the writ of error, either upon motion, or our own initiative, and ordinarily such would follow. See, *Clayton College v. County Court*, 109 Colo. 476, 126 P. (2d) 502. Since, however, it clearly appears from the remarks of the district judge that questions relating to the future custody of the child are to be again considered at the approaching expiration of the one year custodial period, we have elected, as requested, to consider the contentions urged upon the application for supersedeas in order that further delay and additional expense to the parties may be avoided.

Historically, we glean from the obscure record that the parties were married in 1933 and that the child herein involved is the only issue of the marriage. In 1941, probably in August, the husband filed suit for divorce in the county court upon the ground of cruelty and asked for the custody of the child. The answer of the wife alleged that alimony in excess of $2,000 was involved; denied the allegations of cruelty; incorporated a cross complaint for divorce upon the grounds of cruelty and nonsupport, and also prayed for the custody of the child. From the circumstance that subsequent pleadings and proceedings were in the district court, we infer that the litigation was transferred there by the county court upon the jurisdictional basis suggested by the mother's answer. On February 24, 1942, the husband, having withdrawn his answer to the cross complaint and consented that the cause might proceed to hearing thereon without contest, an interlocutory decree of divorce was granted to the wife on the ground of cruelty. With respect to the child, such decree recited: "That Fred A. Williams the plaintiff [the father] herein is a suitable person to have the care and custody of said minor child

and that the custody of said minor child be awarded to the plaintiff, with the right on the part of the defendant [the mother] to visit said minor child at reasonable and convenient times, and to have her once each week over night if the defendant so desires."

Discord soon arose, apparently. (since no copy of the petition appears in the record) over the husband's refusal to allow the wife to take the child for over-night visits and on April 14, 1942, after a hearing, the foregoing order was modified so as to permit the mother to have the child from the time of the closing of school on each Friday afternoon until not later than 6 o'clock p.m. on the following Saturday. The matter again came before the court on June 19, 1942, as a result of which the order questioned in this review was entered. We infer from the remarks of the court that such hearing was upon a petition by the wife (no copy of which is included in the review papers) for modification of the order of April 14 by enlargement of her custodial rights. At the conclusion of this hearing, during which a number of witnesses were examined, the following transpired:

"Mr. Cristiano [Attorney for the husband]: That is all.

"Mr. Russell [Attorney for the wife]: We have no further testimony.

"The Court: Mrs. Wilson [the husband's sister, who was present in court] will you take this child and keep it for a year for the Court?

"A. I will.

"The Court: I am going to assign the custody of this child to Mrs. Opal Wilson for a period of one year and allow her to take the child to her home [in Indiana], I want her to keep it there and I want it back in court here a year from now. By that time perhaps these two people will make up their minds what they are going to do, I know the way they are feeling now toward one another, that child hasn't any business around here in Eads."

Principally, it is contended: First, that under the evidence the court should have awarded the custody of the child to the mother or to her parents, as her counsel suggested orally; and, second, that the court erred in authorizing the removal of the child from Colorado. The evidence goes to the respective abilities and facilities of the parents to care for the physical needs of the child; recites their controversies over the extent of their rights under the previous orders of the court; informs of a serious physical encounter between the husband and a man with whom the mother allegedly kept company following, and also before, the entry of the interlocutory decree of divorce, and covers the character and fitness of the parties to have the custody of the little girl, and their conduct as shown by repute and specific acts. As would be expected, much of this evidence is in hopeless conflict. Counsel for the mother concede that some of the testimony "told a lurid story" of "her possible misconduct" and seek to avoid the effect of such, as well as of other evidence which questioned her moral fitness, by attacking the credibility of the witnesses testifying with respect to such matters.

It is elementary that the resolution of questions relating to the credibility of witnesses and the weight to be accorded their testimony where it is in conflict, are matters peculiarly and exclusively within the province of the trial court, and its conclusions concerning them ordinarily will not be disturbed on review. This principle controls in the case at bar. Whether or not one agrees with the precise dispositional orders made in the series of hearings in this matter, the record makes it very certain that the learned trial judge at all times proceeded upon the principle that the best interests of the child should be the controlling factor in determining the placing of her custody. The pronouncements in the opinion in *Averch v. Averch*, 104 Colo. 365, 90 P. (2d) 962, relative to a mother's right to the custody of a daughter of tender years, are rendered inapplicable

by the circumstance that, differently from here, there was in the record in that case "no evidence" that the mother was "so unfit a person as to endanger the child's welfare" or "to have custody of her child." While ordinarily the custody of a child should not be awarded to a nonresident, nor to one contemplating immediate removal from the state, it, nevertheless, is well established that when it is conducive to the child's best interests, the court may permit it to be removed from the jurisdiction. 27 C.J.S., p. 1179, §313. In the state of the record here, we decline to hold that the trial court erred in ordering as it did. At further hearings to be held upon the return of the child to Colorado we have no doubt the policy of the law with respect to these matters will be considered by the court.

█ █ It is further to be observed that where, in proceedings of this character, the court permits the removal of a child from the state, it may require, as a discretionary matter, that a bond or other security be given to insure its return.

█ Plaintiff in error has filed, as original exhibits in this court, certain letters of the mother addressed to the child in Indiana mailed since the entry of the order under review, and returned to the writer marked, "Refused by guardian," as evidence reflecting the animosity of the present custodian of the child toward the mother and so tending to prove, it is contended, that the court was wrong in awarding the custody as it did. While the subject is a proper one for the attention of the trial court in further hearings in this matter, these letters may not properly be considered by us on this review, and they should not have been attached to the record. Since the decree in the divorce action between these parties is not challenged in this review, specified error based upon alleged erroneous rulings of the trial court relating to the pleadings in that branch of the case, cannot properly be considered herein.

The judgment is affirmed.